UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>vs.<br><br>MIGUEL ANGEL GARIBAY (02),<br><br>                              Defendant. | CASE NO. 10cr2690-MMA-2<br><br>**ORDER DENYING DEFENDANT MIGUEL ANGEL GARIBAY'S MOTION TO SUPPRESS**<br><br>[Doc. No. 35] |

On October 22, 2010, Defendant Miguel Angel Garibay was charged in a five count Second Superseding Indictment with one count of conspiracy to import methamphetamine, in violation of 21 U.S.C. §§ 952, 960, and 963; one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On October 28, 2010, Defendant plead not guilty to all three charges. The matter is currently before the Court on Garibay's motion to suppress evidence. *See* Doc. No. 35. On May 17 and 24, 2011, the Court held an evidentiary hearing on the motion. For the following reasons, the Court **DENIES** the motion to suppress.

///

///

///

///

## **RELEVANT FACTS**

The events at issue in this motion occurred on June 15, 2010.[1] On that day, Border Patrol Agent Henry Ballow, a member of the San Diego Sector Border Patrol Smuggling Interdiction Group, pulled into a Chevron gas station located in Oceanside, California, at the Oceanside/South Harbor Drive exit off of Interstate 5. This gas station is located approximately 13 miles south of the San Clemente Border Patrol Checkpoint and is one of the last service stations available to drivers before the checkpoint. According to Agent Ballow, the gas station is frequently used by smugglers of contraband, who wait for scouts to pass through the checkpoint and determine if it's operational. When Agent Ballow pulled into the gas station in an unmarked vehicle, he observed a silver Ford Expedition with Baja California, Mexico license plates parked next to a fuel pump. Agent Ballow walked into the Chevron food mart in an effort to locate the Expedition's driver and/or passengers. When Agent Ballow entered the store, he observed Garibay attempt to purchase two energy drinks with a $100 bill, at which point the cashier indicated that she could not accept the $100 bill and suggested that Garibay get change at the Denny's restaurant located across the parking lot from the service station.

Garibay exited the food mart, and Agent Ballow followed. While doing so, Agent Ballow used his push to talk cell phone to request the assistance of additional agents, to communicate his observations, and to request a records check for the license plate attached to the Expedition. This records check showed that the Expedition was driven into the United States from Mexico through the San Ysidro, California, Port of Entry ("POE") several hours earlier. The records check also revealed that the Expedition was driven through the POE by an individual named Isidro Ontiveros Delgado. Although the Expedition was not referred to secondary that morning, the records check showed that the Expedition had been referred to secondary on several prior occasions due to its respective drivers' nervous demeanor.

Agent Ballow then observed Garibay enter Denny's. While Garibay was inside Denny's, additional agents arrived. Approximately 25 minutes later, Garibay exited Denny's and began to

---

[1] The Court summarizes the most relevant facts, as found subsequent to hearing testimony and reviewing exhibits presented during the evidentiary hearing.

1  walk towards the Expedition.  Agent Ballow approached Garibay, introduced himself, and identified
2  himself as a Border Patrol agent.  Agent Ballow asked Garibay his name and where he was coming
3  from and where he was going.  According to Agent Ballow, Garibay identified himself by his first
4  name, Miguel, and said he was traveling from South San Diego to Los Angeles.  Based on the
5  records check, Agent Ballow knew that a person with a different first name had driven the
6  Expedition through the POE earlier that day.  According to Garibay, he did not identify himself to
7  Agent Ballow prior to getting back into the Expedition.  Agent Ballow also asked Garibay the
8  compound question of whether Garibay or the Expedition had recently crossed the border, and
9  Garibay replied no.  Based on the earlier records check, Agent Ballow knew this was a false
10 statement with respect to the Expedition, which had crossed into the country earlier that morning.

11 Garibay proceeded to get into the Expedition, and was then approached by additional agents,
12 at which point he responded to questioning, identified himself, and was detained while his vehicle
13 was sniffed and searched, and narcotics were eventually found.  Garibay was arrested for drug
14 smuggling.  After being advised of his *Miranda* rights he invoked his right to remain silent.

## DISCUSSION

16 Garibay contends that the Border Patrol agents detained him without reasonable suspicion, in
17 violation of his Fourth Amendment rights.  Garibay moves to suppress all evidence obtained by the
18 government as a result of the events described above.

19 The Fourth Amendment prohibits "unreasonable searches and seizures" by the government,
20 and its protections extend to brief investigatory stops of persons or vehicles that fall short of a
21 traditional arrest.  *See Terry v. Ohio*, 392 U.S. 1, 9 (1968).  A stop is justified under the Fourth
22 Amendment if the officer's actions are supported by reasonable suspicion to believe that the person
23 stopped is, or is about to be, engaged in criminal activity.  *See United States v. Arvizu*, 534 U.S. 266,
24 273 (2002).  In making a reasonable suspicion determination, the Court looks to the totality of the
25 circumstances to evaluate whether the detaining officer has a "particularized and objective basis" for
26 suspecting legal wrongdoing.  *Id.*  An officer's reasonable suspicion may be informed by his own
27 experience and specialized training, such that he may make inferences from and deductions about
28 the cumulative information available to him that "might well elude an untrained person."  *Id.*

In *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007), the Ninth Circuit explained that "[i]n determining whether a stop was justified by a reasonable suspicion, we consider whether, in light of the totality of the circumstances, the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'... In the context of border patrol stops, the totality of the circumstances may include '(1)characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and the time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver including obvious attempts to evade officers; (6) appearance or behavior of the passengers; (7) model and appearance of the vehicle; and (8) officer experience.'" (citations omitted).

In the present case, the Court finds Agent Ballow credible, experienced, and seemingly well-trained to perform his duties. In combination with his training and experience, Agent Ballow relied on the following facts when making his decision to approach and initiate contact with Garibay: (1) the presence of the Expedition in an area known for drug smuggling – along the Interstate 5 corridor, at a gas station known to Ballow to be frequented by smugglers, 13 miles south of a border checkpoint; (2) the appearance of the Expedition – clean and appearing empty on the inside, with Baja California, Mexico license plates; (3) based on the license plate, a history of the Expedition being sent to secondary due to the nervous behavior of its various drivers; (4) Garibay's attempt to purchase inexpensive convenience store items with a $100 bill; and (5) the Expedition's crossing over the border in San Ysidro several hours earlier.

Garibay does not dispute these particular facts, but contends that these facts did not give rise to reasonable suspicion justifying the stop. For instance, Garibay asserts that there is nothing unusual about an individual possessing a single $100 bill, or purchasing energy drinks at a convenience store, nor is it unusual for a vehicle to have Mexican license plates in Southern California. Garibay argues that this stop was unconstitutional because Agent Ballow's observations all have potentially innocent explanations, as Garibay was engaged in typical daily activities. However, when "the data in the record seems equally capable of supporting an innocent explanation as a reasonable suspicion" the Ninth Circuit has instructed that the court "give due weight to the factual inferences drawn by law enforcement officers." *United States v. Berber-Tinoco*, 510 F.3d

1083, 1087 (9th Cir. 2007). "[S]ometimes conduct that maybe entirely innocuous when viewed in isolation may properly be considered in arriving at a determination that reasonable suspicion exists." *United States v. Montero-Camargo*, 208 F.3d 1122, 1130 (9th Cir. 2000); *id*. at 1139 (for example, "[w]hile having Mexican plates is ordinarily of no significance, where the criminal act suspected involves border-crossing, the presence of foreign license plates may be afforded some weight in determining whether a stop is reasonable.")

The factors in this instance are sufficient to constitute reasonable suspicion for the stop. The information Agent Ballow acquired regarding the vehicle itself through the records check, prior to approaching Garibay, was sufficient when combined with Agent Ballow's experience and additional observations to support reasonable suspicion. The Ninth Circuit has held that it is proper for agents to rely on records check information regarding a vehicle when formulating reasonable suspicion to conduct a stop and subsequent search. *See United States v. Romero-Montiel*, 26 Fed. Appx. 765, 766 (9th Cir. 2002) (upholding search where reasonable suspicion was supported by, *inter alia*, "'narcotics hit' in the TECS computer").

Garibay raises several additional grounds to suppress the evidence obtained as a result of the stop and search in his moving papers, none of which are persuasive. He challenges the legality of the stop and search on grounds that the detention was unreasonably long while he and agents waited for a narcotics detecting dog to arrive. The stop lasted approximately 30 minutes, and thus Garibay's argument fails. *See United States v. Matson*, 345 Fed. Appx. 303, 305 (9th Cir. 2009) ("As to the reasonableness of the 35-minute stop, the agents needed a certified canine to complete their investigation into whether Matson was involved in illegal drug activity."); *United States v. Macias-Encinas*, 2009 U.S. Dist. LEXIS 86852 (S.D. Cal. Sept. 22, 2009) (J. Huff) (45 minute stop in middle of desert while waiting for dog to arrive on the side of the highway in 114-degree heat not unreasonably lengthy); *United States v. Villasenor*, 608 F.3d 467, 471 (9th Cir. Cal. 2010) (forty-five minute wait for agents to arrive with drug dog).

Garibay also argues that the dog's alert to the vehicle did not establish probable cause to search. This argument also fails. *See United States v. Williams*, 35 Fed. Appx. 505, 506 (9th Cir. 2002) (totality of the circumstances, particularly the "alert" given by the drug dog, gave rise to

1  reasonable suspicion for the search of the trunk) (citing *United States v. Dicesare*, 765 F.2d 890,
2  896-97 (9th Cir. 1985)); *United States v. Shelby*, 1992 U.S. App. LEXIS 2238, 7-8 (9th Cir.1992)
3  (holding that "while an alert alone does not establish probable cause without evidence of the dog's
4  reliability, it may establish probable cause in combination with other probative evidence; probable
5  cause is evaluated in light of the totality of the circumstances") (citing *Illinois v. Gates*, 462 U.S.
6  213, 238 (1983)). Once the agents had probable cause to believe that the Expedition contained a
7  controlled substance, they were entitled to conduct a warrantless search "of every part of the vehicle
8  and its contents . . . that [might have] conceal[ed] the object of the search." *United States v. Ross*,
9  456 U.S. 798, 825 (1982). To the extent Garibay challenges the qualifications of the dog, sufficient
10 evidence establishing the dog's abilities and skills was provided by the government such that the
11 dog's qualifications are not reasonably in question.

12  Finally, Garibay argues that he was effectively under arrest once he was detained while
13 waiting for the dog to arrive, and as such, he was arrested without probable cause. This argument
14 fails as well. The alleged restraint on the freedom or movement of Garibay during questioning and
15 while waiting for the narcotics dog to arrive are consistent with a reasonable investigatory stop, and
16 are not of the degree associated with a formal arrest. *See United States v. Rousseau*, 257 F.3d 925,
17 929-30 (9th Cir. 2001); *United States v. Patterson*, 648 F.2d 625, 632 (9th Cir. 1981) (complete but
18 brief restriction of liberty does not necessarily amount to de facto arrest necessitating probable
19 cause).

## CONCLUSION

21  Based on the foregoing, the Court **DENIES** Defendant Miguel Angel Garibay's motion to
22 suppress.

23  **IT IS SO ORDERED**.

24 DATED: May 27, 2011

Hon. Michael M. Anello
United States District Judge